**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
J.T.,                                   )
                                        )
              Plaintiff,                )
                                        )
       v.                               )        Civil Action No. 21-3002 (RBW)
                                        )
DISTRICT OF COLUMBIA,                   )
                                        )
              Defendant.                )
_____)

## <u>MEMORANDUM OPINION</u>

The plaintiff, J.T., on behalf of her minor child, V.T., brings this civil action against the

defendant, the District of Columbia ("the District"), pursuant to the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1400.  <u>See</u> Complaint for Injunctive and Declaratory

Relief ("Compl.") ¶ 1, ECF No. 4.  On November 19, 2021, the Court "referred [this case] to a

Magistrate Judge for full case management up to, but excluding, trial[,] . . . includ[ing], with

respect to any dispositive motions, preparation of a report and recommendation[.]"  Order at 1

(Nov. 19, 2021), ECF No. 6.  Thereafter, the plaintiff filed a motion for summary judgment, <u>see</u>

Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Mem."), ECF

No. 35, and the defendant filed a cross-motion for summary judgment, <u>see</u> Defendant District of

Columbia's Opposition to Plaintiff's Motion for Summary Judgment and Cross Motion for

Summary Judgment ("Def.'s Mem."), ECF No. 39.  On January 4, 2023, Magistrate Judge G.

Michael Harvey issued a Report and Recommendation, recommending that the Court deny the

plaintiff's motion and grant the defendant's motion.  <u>See</u> Magistrate Judge's Report and

Recommendation ("Report" or "R & R") at 2, ECF No. 48.  Currently before the Court are the

plaintiff's objections to the Magistrate Judge's Report. <u>See</u> Plaintiff's Objections to the

Magistrate Judge's Proposed Findings and Recommendations ("Pl.'s Obj.") at 1, ECF No. 49.

Upon careful consideration of the parties' submissions,[1] the Court accepts and adopts the

Magistrate Judge's Report, and therefore denies the plaintiff's motion for summary judgment,

and grants the defendant's cross-motion for summary judgment.

## I.   BACKGROUND

### A.   Statutory and Regulatory Background

The IDEA mandates that states receiving federal educational funding, including the

District of Columbia, must establish "policies and procedures to ensure" that "[a] free

appropriate public education[or 'FAPE',]" 20 U.S.C. § 1412(a)(1)(A), which includes "special

education and related services designed to meet their unique needs and [to] prepare them for

further education, employment, and independent living[,]" id. § 1400(d)(1)(A), is available to all

children with disabilities[,]" id. § 1412(a)(1)(A).   "To that end, the IDEA provides procedural

protections for disabled students, confers a substantive right to a [FAPE], and sets forth dispute

resolution procedures in case a student's parents and her school disagree on the assistance that

the IDEA requires the school to provide."   Herrion v. District of Columbia, No. 20-cv-3470

(RDM), 2023 WL 2643881, at *1 (D.D.C. Mar. 27, 2023).

"Children determined [to be] eligible for special education and services under the IDEA

receive an 'individualized educational program,' or IEP."   Middleton v. District of

Columbia, 312 F. Supp. 3d 113, 121 (D.D.C. 2018) (quoting 20 U.S.C. § 1401(9)(D), (14)).   An

"IEP sets out the child's present academic and functional performance, establishes measurable

---

[1] In addition to the filings already identified, as well as Magistrate Judge Harvey's Report and Recommendation and the Administrative Record ("AR"), the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Reply Regarding Summary Judgment and Opposition to District's Cross-Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 41; (2) the Defendant's Reply to Plaintiffs' Opposition to Defendant's Cross-Motion for Summary Judgment ("Def.'s Reply"), ECF No. 47; (3) Defendant District of Columbia's Response to Plaintiff's Objections to the Magistrate Judge's Report and Recommendation ("Def.'s Obj. Resp."), ECF No. 51; and (4) the Plaintiff's Reply Regarding Objections ("Pl.'s Obj. Reply"), ECF No. 52.

academic and functional goals for the child, and states the special education and related services that will be provided for the child." Id. (citing 20 U.S.C. § 1414(d)(1)(A)). Accordingly, an "IEP is the means by which special education and related services are 'tailored to the unique needs' of a particular child." Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist., RE-1, 580 U.S. 386, 391 (2017). An IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Id. at 399. IEPs are prepared by an "IEP team[,]" which is comprised of "a group of individuals" including the student's parents, special and non-special education teachers, as well as a representative of the local educational agency ("LEA"), and "whenever appropriate, the child" him or herself. 20 U.S.C. § 1414(d)(1)(B)(i)– (vii). Parents who claim that their child was denied a FAPE "shall have the opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the [LEA]." 20 U.S.C. § 1415(f)(1)(A). Under the IDEA, a "party aggrieved by the findings and decision" of the Hearing Officer may bring a civil action in federal court. 20 U.S.C. § 1415(i)(2)(A).

**B.    Factual Background**

The full factual background of this action has already been described in great detail in Magistrate Judge Harvey's Report, see R & R at 1–9, and the parties have not objected to the findings of fact contained therein, see generally Pl.'s Obj.; Def.'s Obj. Resp.; Pl.'s Obj. Reply. The Court will therefore not repeat all of those facts again here. However, the following facts are relevant to the parties' objections.

V.T., the plaintiff's minor son, "suffers from an autism spectrum disorder, which includes atypical response to sensory stimuli." Pl.'s Mem. at 4. The plaintiff purports that her son V.T. "is an extreme sensory avoider for sounds[ ]" who's "sensitivity [is] much greater than the

average student with sensory processing and integration issues." Id. (internal quotation marks omitted). Specifically, V.T.'s "severe intolerance and sensory processing difficulties cause him to begin shaking and trembling or screaming, closing his eyes[ and] closing his ears when confronted with difficult stimuli." Id. (internal quotation marks omitted). Due to V.T. suffering from his sensory problems, the plaintiff contends that V.T. "cannot tolerate road travel at even low speeds lasting more than several minutes." Id. Thus, "[a long] morning commute, in particular, renders V.T. too upset to participate in school once he arrives." Id. (alterations in original) (quoting J.T. v. District of Columbia ("J.T. I"), 496 F. Supp. 3d 190, 207 (D.D.C. 2020), aff'd, 20-7105, 2022 WL 16707 (D.C. Cir. Jan. 11, 2022).

The parties have litigated V.T.'s school assignment before. See generally J.T. I., 496 F. Supp. 3d 190.[2] At the end of the 2019–2020 school year, the parties "reached an agreement that [the defendant, the District of Columbia Public Schools (']DCPS['),] would provide virtual instruction to V.T. through a DCPS[3] public school." R & R at 7. Virtual instruction began "in June 2020 and continued through the 2020–2021 school year." Id. In July 2020, the parties developed an IEP for V.T. that "provided [twenty-four] hours per week of specialized instruction, six hours per month of speech-language pathology, six hours per month of occupational therapy, and four hours per month of behavioral support services, all [to be provided] outside the general education setting; various consultation services; a maximum class size of nine students; a dedicated aide; and special education transportation on a [District of

---

[2] Similar to the complaint in this case, the complaint in J.T. I "challeng[ed] three separate administrative determinations—two for the 2018–2019 school year and one for the 2019–2020 school year[,]" and that "[the DCPS] denied V.T. a free appropriate public education[.]" 496 F. Supp. 3d at 194. Specifically, the J.T. I court held that the "DCPS did not deny V.T. a FAPE for the 2018–2019 school year," but did find that V.T. was entitled to "compensatory education for [the] DCPS's failure to identify an appropriate placement for him for the 2019–2020 school year[.]" Id. at 213.

[3] DCPS is the acronym for District of Columbia Public Schools.

Columbia Department of Transportation ('|DOT[')] vehicle." Id.  The IEP did not specify any accommodations for V.T.'s purported difficulties with vehicle travel for extended periods of time.[4]  See id.; see also AR at 1040, ECF No. 43-1.

The parties later modified the July 2020 IEP in October of the same year (the "2020 IEP"), in compliance with a court order issued by another member of this Court.  See id. at 8; J.T. I, 496 F. Supp. 3d at 213 ("[the defendant] must identify a new placement that complies with V.T.'s [then] current IEP within one month of the date of this decision[.]").  The lone modification at that time was to extend the date of V.T.'s dedicated aide to July 2021.  See R & R at 7–8.  On October 30, 2020, the defendant provided V.T.'s parents with a "Location of Services" letter ("LOS") that identified Sheppard Pratt-Rockville ("Sheppard Pratt") as V.T.'s school for the 2020–2021 school year.  Id.

The plaintiff filed her due process complaint that is at issue in this case in November of 2020.  See id. at 9.  The complaint alleged four violations for the 2020–2021 school year arising from the 2020 IEP: "(1) Failure to develop an appropriate IEP[;] (2) Failure to determine a school placement via valid legal procedure designed to ensure full parental participation in decision[-]making[;] (3) Failure to provide an appropriate school placement[; and] (4) Failure to provide access to education records."  Id.  A footnote included in the due process complaint specified that the plaintiff "allege[d that the defendant] fail[ed] to appropriately and legally determine a particular program at a particular school or school substitute."  Id. at 10.  In response to the due process complaint, a hearing officer issued a pre-hearing order outlining "[t]he issues to be adjudicated" at a future hearing:

---

[4] The plaintiff's counsel did request "additional information regarding transportation restrictions be added to the IEP."  R & R at 7.  However, because the plaintiff's counsel was unable to provide medical documentation to support the purported restrictions, the requested transportation restrictions were not added to the IEP.  See id.

(1) Whether [the defendant] denied [V.T.] a FAPE by failing to provide [him] an appropriate IEP[;]

(2) Whether [the defendant] denied [V.T.] a FAPE by failing to determine a school placement via valid legal procedures designed to ensure full parental participation in decision[-]making[;]

(3) Whether [the defendant] denied [V.T.] a FAPE by failing to provide [him] an appropriate school placement[; and]

(4) Whether [the defendant] denied [V.T.] a FAPE by failing to provide [the plaintiff] access to [his] education records.

Id. The same footnotes included in the pre-hearing order were also included in the due process complaint. See id.

Prior to the administrative hearing conducted by the hearing officer,[5] on December 2, 2020, the parties conducted an IEP meeting with personnel from the Sheppard Pratt school to discuss implementing the 2020 IEP. See id. at 8. Although Sheppard Pratt had been identified by the defendant for V.T. in a prior year, he never attended the school. See Id. Sheppard Pratt personnel explained to the plaintiff that implementation of "the [new] lower and middle school program" would result in V.T. being placed in a classroom that "serves a mix of students with emotional disabilities and autism[.]" Id. (internal quotation marks omitted).

On the issue of V.T.'s transportation to and from school, the plaintiff was told that "Sheppard Pratt would not be responsible for [his] transportation [and that the] DCPS and the Office of the State Superintendent of Education ("OSSE") would work with the parents regarding bus travel." Id. at 8–9. Understanding that transportation would be a concern, a LEA monitor, who was present at the December 2020 meeting, indicated that the DCPS had a letter from V.T.'s physician noting that "[V.T.'s] parents have reported that he gets motion sickness

---

[5] The due process hearing ultimately took place over five days beginning on May 24, 2021 and concluding on July 20, 2021. See AR at 8, ECF No. 43-1.

when he travels for time periods of over [fifteen] minutes." Id. at 9.  The LEA monitor noted
that while "[they did] have the parent[s'] report[, they did not] actually know [ ] what [V.T.'s]
needs [were] at th[at] point." Id.  The participants at the December 2020 meeting also discussed
"Sheppard Pratt's ability to implement the 2020 IEP" and the plaintiff "asked several questions
about the school and the classroom [ ] proposed for V.T." Id.

On August 6, 2021, at the conclusion of the 2020–2021 school year, see AR at 4–5, ECF
No. 43-1, the hearing officer who presided at the due process hearing issued a decision (or
"HOD"), which included findings of fact, see id. at 9.  Relevant here, the hearing officer found
that "[V.T.] resides with [the plaintiff] in the District of Columbia and is a child with a disability
pursuant to IDEA," and the "DCPS developed an IEP for [V.T.] dated July 30, 2020[,]" and that
"[the plaintiff] and [the] DCPS agreed that [V.T.] would be provided instruction and related
services virtually on an interim basis during the C[OVID-19] emergency . . . pending a final
determination of an appropriate non-public separate school that could meet [V.T.]'s needs." Id.
The hearing officer further found that "[o]n December 2, 2020, [the] DCPS convened [another]
meeting . . . to discuss S[heppard Pratt]'s ability to implement [V.T.]'s IEP[,]" during which
"[V.T.]'s mother and her attorney, staff members from S[heppard Pratt], and DCPS staff [all]
participated in the meeting." Id. at 11.

Also important was the hearing officer finding that "[V.T.]'s mother [ ] discovered that
[V.T.] suffers from motion sickness when she drives [V.T.] in a car for more than twenty
minutes[,]" but that although "[V.T.]'s motion sickness was reported by [his] parent[, it was]
never independently verified." Id. at 13.  The purported motion sickness having never been
verified by a medical professional, the "DCPS requested updated documentation regarding this
condition, but [the plaintiff[ ha[s] been unable to obtain any other verification." Id.  The hearing

officer found that "[a] DCPS occupational therapist can prescribe accommodations that may assist a student who experiences motion sickness on a school bus, including the student wearing some type of device that would assist." Id.

Finally, the hearing officer also found that the "DCPS provided [the plaintiff] the communications log that [she] had requested." Id. The hearing office ultimately found against the plaintiff as to each of the four issues raised in the due process complaint, see AR at 14–19, and dismissed the complaint with prejudice, see id. at 19.

**C.   Procedural Background**

On November 5, 2021, the plaintiff filed her complaint on behalf of V.T. seeking declaratory and injunctive relief against the defendant. See Compl. at 1. On November 19, 2021, the matter was referred by this Court to Magistrate Judge G. Michael Harvey for full case management. See Order at 1 (Nov. 19, 2021), ECF No. 6. The parties then filed cross-motions for summary judgment. See Pl.'s Mem.; Def.'s Mem. Shortly thereafter, the parties also filed briefs opposing and replying to the cross motions. See Pl.'s Opp'n; Def.'s Reply.

On January 4, 2023, the Magistrate Judge issued his Report finding that V.T. was not denied a FAPE, see R & R at 2, specifically concluding that (1) the plaintiff's claim based on the failure to provide her with V.T.'s records was moot and should be dismissed; (2) the plaintiff's claim that V.T. was denied a FAPE for two months of the 2020–2021 school year had not been administratively exhausted; (3) the plaintiff was provided the opportunity to participate in the IEP decision, and (4) that despite the 2020 IEP not addressing transportation for V.T., V.T. suffered no substantive educational harm from that omission and the IEP was otherwise appropriate. See generally id. Ultimately, the Magistrate Judge recommended dismissing the

plaintiff's records[6] related claim as moot, denying the plaintiff's motion for summary judgment, and granting the defendant's cross-motion for summary judgment.  R & R at 45–46.

On January 18, 2023, the plaintiff timely objected to several of the Magistrate Judge's recommendations.  See generally Pl.'s Obj.  On February 8, 2023, the defendant filed its response to the plaintiff's objections.  See generally Def.'s Obj. Resp.  Finally, on February 15, 2023, the plaintiff filed her reply in support of her objections to the Magistrate Judge's Report. See generally Pl.'s Obj. Reply.

## II.   STANDARDS OF REVIEW

### A.   Summary Judgment Standard under the IDEA

In a civil action reviewing an IDEA administrative determination, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the [c]ourt may receive."  D.R. ex rel. Robinson v. District of Columbia, 637 F. Supp. 2d 11, 16 (D.D.C. 2009).  The court "shall receive the records of the administrative proceedings[,]" "shall hear additional evidence at the request of a party[,]" and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).

If "neither party asks the Court to consider additional evidence, 'the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.'"  Montuori v. District of Columbia, No. 17-cv-2455 (CKK), 2018 WL 4623572, at *2 (D.D.C. Sept. 26, 2018) (quoting Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997)).  "The burden of proof is with the party challenging the administrative determination, who must 'at least take on the burden of persuading the court that

---

[6] Although the plaintiff alleged the she was denied access to multiple records, see Pl.'s Mem. at 30, there in fact is only "[a] single record at issue[,]" R & R at 18.

the hearing officer was wrong.'"  Dixon v. District of Columbia, 83 F. Supp. 3d 223, 230

(D.D.C. 2015) (quoting Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 521 (D.C. Cir.

2005)).  Although "[t]he court gives 'due weight' to the [hearing officer's decision] and does not

substitute its own view of sound educational policy for that of the hearing officer[,]" id. (quoting

Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458

U.S. 176, 206 (1982)), "less deference is to be accorded to the hearing officer's decision than

would be the case at a conventional administrative proceeding[,]" Stanton ex rel. K.T. v. District

of Columbia, 680 F. Supp. 2d 201, 205 (D.D.C. 2010).  "[W]ithout reasoned and specific

findings[,]" a hearing officer's decision "deserves little deference."  Kerkam v. Superintendent,

D.C. Pub. Schs. ("Kerkam II"), 931 F.2d 84, 87 (D.C. Cir. 1991) (internal quotation marks

omitted); but see Kerkam v. Mckenzie ("Kerkam I"), 862 F.2d 884, 887 (D.C. Cir. 1988) ("[The

plaintiff] challenging the administrative determination must at least take on the burden of

persuading the court that the hearing officer was wrong, and that a court upsetting the officer's

decision must at least explain its basis for doing so.").

## B.    Objections to Report and Recommendation

After a magistrate judge issues a report and recommendation, "[t]he district judge must

determine de novo any part of the magistrate judge's [report and recommendation] that has been

properly objected to."  Fed. R. Civ. P. 72(b)(3).  "The district judge may accept, reject, or modify

the recommend[ation] [ ]; receive further evidence; or return the matter to the magistrate judge

with instructions."  Id.  "Proper objections 'shall specifically identify the portions of the

proposed findings and recommendations to which objection is made and the basis for [an]

objection.'"  Shurtleff v. United States Env't Prot. Agency, 991 F. Supp. 2d 1, 8 (D.D.C. 2013)

(quoting Local R. Civ. P. 72.3(b)).  Objections that "merely rehash an argument presented and

considered by the magistrate judge are not properly objected to and are therefore not entitled to de novo review." Id. (internal quotation marks omitted).  Therefore, if the plaintiff "simply reiterat[es] [her] original arguments, the Court [will] review[ ] the [R & R] only for clear error." Houlahan v. Brown, 979 F. Supp. 2d 86, 88 (D.D.C. 2013) (internal quotation marks omitted).

## III.    ANALYSIS

The plaintiff raises four objections to the Magistrate Judge's Report: (1) that the plaintiff's request for access to V.T.'s records is moot because she has already received them, see Pl.'s Obj. at 32–33; (2) that the plaintiff failed to exhaust her administrative remedies regarding the DCPS's failure to provide V.T. a placement for the first quarter of the 2020–2021 school year, see id. at 20–24, (3) that the plaintiff was not denied meaningful participation in the placement decision for V.T., see id. at 30–31; and (4) that the plaintiff is not entitled to any of the relief requested, see id. at 14–19.  Although the defendant takes exception with the Magistrate Judge's finding that the defendant violated the IDEA by not including additional transportation accommodations in V.T.'s 2020 IEP, it requests that all of the plaintiff's objections be rejected, including her requested relief for the alleged transportation violation.  See Def.'s Obj. Resp. at 4.  The Court will address each of the plaintiff's objections.

## A.    The Plaintiff's Mootness Challenge Regarding the Records She Requested

The Court will first address whether the plaintiff's claim that the defendant withheld records ("the plaintiff's records claim") in violation of the IDEA is moot.  The plaintiff alleges that she is entitled to relief for the defendant "illegally den[ying her] access to educational records for several months."  Pl.'s Mem. at 30.  The defendants produced the single record at issue—a communications log—"one week before the [due process] hearing[,]" id. at 31, and now argues that the claim is moot because this record was provided to the plaintiff, see Def.'s Mem.

at 12.  In response, the plaintiff argues that "[the defendant]'s voluntary cessation of its illegal behavior did not moot the records claim because the wrongful behavior can recur[.]"  See Pl.'s Opp'n at 18.

The IDEA requires local educational agencies to provide "[a]n opportunity for the parents of a child with a disability to examine all records relating to such child[.]"  Malloy v. District of Columbia, No. 20-cv-3219 (DLF), 2022 WL 971208, at *1 (D.D.C. Mar. 30, 2022) (citing 20 U.S.C. § 1415(b)(1)).  "When a parent requests such records, '[the school district] must comply [ ] without unnecessary delay and before [ ] any [due process] hearing,' 34 C.F.R. § 300.613(a), and a failure to do so 'is a procedural violation of the IDEA[.]'"  Malloy, 2022 WL 971208, at *5 (quoting Simms v. District of Columbia, No. 17-cv-970 (JDB/GMH), 2018 WL 4761625, at *21 (D.D.C. July 26, 2018)).  However, a plaintiff has a viable claim under the IDEA "only if [it] affect[s] the student's substantive rights."  Lesesne ex rel. B.F. v. District of Columbia, 447 F.3d 828, 834 (D.C. Cir. 2006).

Put differently, "a procedural violation [under the IDEA] . . . will constitute a denial of a [FAPE] only if it 'result[s] in loss of educational opportunity' for the student."  Leggett v. District of Columbia, 793 F.3d 59, 67 (D.C. Cir. 2015) (quoting Lesesne, 447 F.3d at 834).  Thus, "a school district's failure to comply with the procedural requirements of IDEA[,]" such as not providing access to educational records,  see 20 U.S.C. § 1415(b)(1), "will be actionable only 'if those procedural violations affected the student's substantive rights[,]'"  Leggett, 793 F.3d at 67 (internal quotation marks omitted).

For a federal court to have jurisdiction over a claim under the IDEA, there must be an "actual, ongoing controvers[y]."  J.T. v. District of Columbia, 983 F.3d 516, 522 (D.C. Cir. 2020) (quoting McBryde v. Comm. To Rev. Cir. Council Conduct, 264 F.3d 52, 55 (D.C. Cir.

2001)).  "Accordingly, the mootness doctrine prohibits [a court] from deciding a case if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  J.T., 983 F.3d at 522 (quoting Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990)).

There are multiple exceptions to the mootness doctrine—relevant here, the voluntary cessation exception.  This exception provides that voluntarily ceasing "conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed."  Knox v. Serv. Emps. Int'l Union, 567 U.S. 298, 307 (2012).  Under the voluntary cessation standard, "the [claim] is moot only if (1) 'there is no reasonable expectation that the [alleged] violation will recur' and (2) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'"  Indian River Cty. v. Rogoff, 254 F. Supp. 3d 15, 19 (D.D.C. 2017) (quoting Larsen v. U.S. Navy, 525 F.3d 1, 4 (D.C. Cir. 2008)); see also Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc., 528 U.S. 167, 189 (2000) ("A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.") (internal quotation marks omitted).

In recommending mootness, here, the Magistrate Judge considered cases involving the Freedom of Information Act ("FOIA") for guidance in determining whether the plaintiff's records claim is moot.  See R & R at 20.  Specifically, the Magistrate Judge cited Harvey v. Lynch, 123 F. Supp. 3d 3 (D.D.C. 2015), for the proposition that "whe[n] the government releases all [ ] the documents in dispute in a pending FOIA suit," the release moots that claim. Id. at 7.  Accordingly, the Magistrate Judge recommends that summary judgment be granted in favor of the defendant on the plaintiff's records claim based upon mootness because "by the time

of the [ ] due process hearing in May 2021, [the] DCPS had provided [the plaintiff] the single

record at issue[,]" R & R at 18, and since the "wrong [ ] 'came to an end' [ ] the voluntary

cessation doctrine cannot save it from mootness[,]" id. at 21; see also Harvey, 123 F. Supp. 3d

at 8 ("[b]ecause [the p]laintiff [does not] challenge[ ] . . . a 'practice' that the [defendant] might

reinstate upon the conclusion of this lawsuit, the voluntary cessation doctrine does not apply[.]").

     The plaintiff objects to the Magistrate Judge's mootness recommendation, noting that

"[the defendant] has not provided [ ] access[,]" to educational records and the defendant is "free

to return to [its] old ways by refusing to provide access to other parts of the student's record."

Pl.'s Obj. at 32 (internal quotation marks omitted).  However, there is no dispute that the plaintiff

now has the single record that she sought, see id., and the plaintiff does not directly challenge

any policies or practices that have been utilized by the defendant which undermines its mootness

position, id. at 33 ("[T]he [p]laintiff need not allege a policy behind [the defendant]'s actions.");

but see e.g., Cause of Action Inst. v. U.S. Dep't of Just., 282 F. Supp. 3d 66, 78 (D.D.C. 2017)

(finding a claim moot notwithstanding the voluntary cessation doctrine where there were no

allegations of a pattern or practice of delayed production and the plaintiff sought only the

disclosure of a specific document).  Although the plaintiff is not required to show the existence

of a policy or practice for voluntary cessation to apply, she does need to show that the defendant

could "pick up where [it] left off," Indian River Cty., 254 F. Supp. 3d at 19, once the case is

deemed moot.  Here, however, there appears no potential that the defendant could again withhold

records from the plaintiff for the foreseeable future now that V.T. is enrolled in a new LEA that

has already requested his entire educational file.  Def.'s Mem. at 9, 12 ("[V.T.] is now enrolled at

Friendship PCS, which requested all of V.T.'s records from DCPS."); 20 U.S.C. § 1414

(d)(2)(C)(ii) ("[T]he new school in which the child is enrolled shall take reasonable steps to

promptly obtain the child's records[.]"); 34 C.F.R. § 300.323(g) (same). And the plaintiff does not allege that the new LEA has not obtained V.T.'s records.  See generally Pl.'s Mem. Moreover, as already noted, the plaintiff also received the record at issue before the due process hearing was conducted, see R & R at 17, which, without indication that she was prejudiced by the timing of the disclosure, further weighs against the plaintiff's argument that the timing of the disclosure caused substantive harm to V.T.'s education.  Accordingly, because "there is no reasonable expectation that the [alleged] violation will recur[,]" and absent compelling evidence that the "relief . . . [has not] irrevocably eradicated the effects of the alleged violation[,]" Indian River Cty., 254 F. Supp. 3d at 19, the Court concludes that the voluntary cessation exception to the mootness doctrine does not apply, and it must therefore grant summary judgment to the defendant on the plaintiff's failure to produce records claim on mootness grounds, Schmidt v. United States, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (when a claim becomes moot, federal courts are "divested of jurisdiction over the action.").

**B.      Exhaustion of Administrative Remedies**

Next, the Court will address whether the plaintiff exhausted her administrative remedies regarding her allegation that V.T. had no school placement for the first quarter of the 2020–2021 school year.  See Pl.'s Mem. at 15 ("[the defendant] failed to place V.T. in any school [ ] until [ ] one quarter of the way through the school year.").  In response, the defendant argues that "the issues to be decided at the outset of the [HOD] demonstrates that [the p]laintiff did not exhaust any claim related to the implementation of V.T.'s IEP for the first quarter of the [ ] school year." Def.'s Mem. at 13–14.  The plaintiff counters that "[the hearing officer] completely ignored [the failure to place V.T. at a school in 2020] in the final determination."  Pl.'s Opp'n at 2.

Under the IDEA, the administrative process "is not 'just an optional stop on the way to court.'" B.R. ex rel. Rempson v. District of Columbia, 802 F. Supp. 2d 153, 162 (D.D.C. 2011) (quoting Andersen ex rel. Andersen v. District of Columbia, 877 F.2d 1018, 1025 (D.C. Cir. 1989)).  Rather, "the IDEA requires a plaintiff to exhaust administrative remedies before turning to the courts." Id. (citing Cox v. Jenkins, 878 F.2d 414, 418 (D.C. Cir. 1989)).  Furthermore, "[p]laintiffs are prohibited from 'rais[ing] issues [ ] that were not raised in the due process complaint,' unless the school district agrees otherwise." Damarcus S. v. District of Columbia, 190 F. Supp. 3d 35, 55 (D.D.C. 2016) (alterations in original) (citing 34 C.F.R. § 300.511(d)).  Failing to exhaust administrative remedies gives "[a d]istrict [c]ourt [ ] no authority to hear the [ ] suit[,]" Cox, 878 F.2d at 422, "absent a showing that exhaustion would be futile or inadequate[,]" id. at 419.

The operative language at issue in the due process complaint appears to be the defendant's alleged "[f]ailure to provide an appropriate school placement." AR at 91, ECF No. 43-1 (emphasis added); see also R & R at 22 ("the most natural reading of [the] alleged violation [ ] is that the placement identified was not appropriate, not that there was no placement.").  The Magistrate Judge notes that the plaintiff herself appeared to agree that the issue was the appropriateness of the school placement, rather than the timing of it.  R & R at 23 ("[the defendant] asked [the school's LEA monitor] about the run-up to th[e school placement] decision, specifically about the process [the defendant] engaged in to find an appropriate school for V.T. as of October 30, 2020 . . . [, to which the p]laintiff's counsel objected to the line of questioning as irrelevant.").  In fact, the plaintiff did not explicitly challenge the timing of V.T.'s school placement until the closing arguments.  AR at 3070, ECF No. 45-1 ("First off, there was no school at all offered for [V.T.] before October 30th. [The defendant] had some defenses on

that. I'll address those in a minute. But the simple fact is they offered no school for V.T. for this last school year until October 30th[.]").[7]  Thus, because the plaintiff never appeared to properly challenge whether V.T. was timely placed in a school for the first quarter of the 2020–2021 school year,[8] the Magistrate Judge recommends denying the plaintiff's motion for summary judgment as to this claim "because it is unexhausted."  R & R at 24.

The plaintiff objects to the Magistrate Judge's recommendation noting that "the claim statement, alone, alleges a 'failure' to do something[,]" Pl.'s Obj. at 21, and points to the facts section of the complaint which indicates that V.T. did not receive a school placement until October 30, 2020,  see id.; see also AR at 91, ECF No. 43-1.  The plaintiff argues that "each statement of 'fact[ ] relating to [the] problem' in the due process complaint is specifically numbered and targeted to cover an element of one of the claims."  Pl.'s Obj. at 22 (citing 20 U.S.C. § 1415 (b)(7)(A)(ii)(III)).  The defendant in response points to a footnote on the same page of the complaint that clarifies that the violation in question "is for [the defendant]'s failure to provide an appropriate school."  AR at 53, ECF No. 43-1 (emphasis added); see also Def.'s Obj. Resp. at 14.  The defendant further notes that, as the Magistrate Judge found, "during [the hearing] [ ] [the p]laintiff's counsel agreed that the timing of the [placement] was not an issue in the case."  Id. at 15; see also R & R at 23.  On this record, the Court finds the plaintiff's timing objection unpersuasive.

While the plaintiff is correct that the due process complaint is required to contain "a description of the nature of the problem[,]" 20 U.S.C. § 1415 (b)(7)(A)(ii)(III), a cursory

---

[7] As the Magistrate Judge further notes, the plaintiff never "explicitly identified [the defendant]'s alleged defenses to the timeliness issue."  R & R at 24 n.11.

[8] The Magistrate Judge noted that the hearing officer explicitly stated at the due process hearing that "[t]he timing [ ] 'is not an issue in this case[,]'" to which the plaintiff never objected. R & R at 23–24.

reference to the date of the child's school placement does not amount to an actual allegation of a

violation of the IDEA.  See Adams v. District of Columbia, 285 F. Supp. 3d 381, 394 (D.D.C.

2018) (finding that an issue with a child's IEP merely discussed during the hearing was not

properly exhausted).  Indeed, the pertinent statute provides that in describing the nature of the

claim to be litigated, the due process complaint shall "includ[e] facts relating to such

problem[s.]"  20 U.S.C. § 1415 (b)(7)(A)(ii)(III).  Upon review of the due process complaint

here, it is clear that the plaintiff included the disputed language as a factual allegation supporting

her claims, but not as a claim under the IDEA in and of itself, considering that the allegation is

contained in the "Facts" section as opposed to the "Violations" section.  See AR at 90–91, ECF

No. 43-1.  To be sure, this is not a prerequisite for alleging a claim in a due process complaint,

but the plaintiff needed to "properly raise [her] claim," Damarcus S., 190 F. Supp.3d at 55, in the

due process complaint so that the hearing officer could "acknowledge" what the plaintiff's claim

was, cf. Thomas v. District of Columbia, 773 F. Supp. 2d 15, 18 (D.D.C. 2011) ("Although the

plaintiff did not explicitly list counts . . . as 'violations' in her due process complaint, she did

allege facts supporting such claims and the hearing officer acknowledged and addressed these

accusations in his ruling on the due process complaint.").  Furthermore, as the Magistrate Judge

correctly observed, "[i]t is not enough merely to mention a possible argument in the most

skeletal way, leaving the [C]ourt to do counsel's work[,] Schneider v. Kissinger, 412

F.3d 190, 200 n.1 (D.C. Cir. 2005), in assessing all of the possible claims that were presented.

The plaintiff also points to the prior litigation between the parties to support her argument

that she has exhausted her administrative remedies with regard to V.T.'s delayed placement in

2020.  See Pl.'s Obj. at 23; see also J.T. I, 496 F. Supp. 3d 190.  Specifically, the plaintiff states

that "in an earlier case involving the same parties, [she] alleged the exact same situation, and

phrased her claims exactly the same[,] . . . [and] the [defendant] never alleged a failure to exhaust." Pl.'s Obj. at 23. The facts in J.T. I are similar to this case—namely, in J.T. I, the plaintiff argued that "V.T. [was] entitled to compensatory education for [ ] the entirety of the 2019–2020 school year, during which . . . [the defendant] provided no proposed placement." 496 F. Supp. 3d at 200. Moreover, in J.T. I, the plaintiff was awarded compensatory education based upon the defendants' failure to place V.T. for that school year. See id. at 211.

However, the plaintiff omits several key points in relying on the prior case to support her objection in this case. First, in J.T. I, the defendant never appealed the HOD ruling that V.T. had not been placed in a school for the 2019–2020 school year, and thus, it was no longer at issue. Id. ("[T]he hearing officer determined that [the defendant] denied V.T. [a] FAPE by not offer[ing] V.T. an educational placement at the start of [the] 2019–2020 [school year and] . . . [the defendant] did not appeal that decision." (internal quotation marks omitted)). As the Court has already made clear earlier in this opinion, supra at 16, the defendant must agree that a plaintiff may raise issues in the due process hearing "that were not raised in the due process complaint[.]" Damarcus S., 190 F. Supp. 3d at 55; see also Adams, 285 F. Supp. 3d at 394 ("The law is clear that the scope of an IDEA hearing extends only to those issues raised in the [d]ue [p]rocess [c]omplaint, and that matters not presented to the [h]earing [o]fficer are not administratively exhausted for the purposes of district[ ]court review."). Here, this issue was not raised in J.T. I, and the defendant has made no agreement or concession that it could be raised in this case. Def.'s Mem. at 13 (arguing "issues that are not certified for determination in a hearing officer's prehearing order are not properly exhausted for the purposes of judicial review and must be subject of a new administrative due process complaint.").

Furthermore, the 2020 IEP was modified on October 30, 2020, by order of the court in J.T. I.  496 F. Supp. 3d at 213 ("[The defendant] must identify a new placement that complies with V.T.'s current IEP within one month of the date of this decision[.]").[9] Importantly, in this case, the parties originally convened in July 2020 to discuss V.T.'s upcoming school placement, when the plaintiff and the defendant agreed to a tentative school placement at Garrison Elementary School ("Garrison") for V.T. in the 2020 IEP.  See AR at 9–10, ECF No. 43-1; see also Def.'s Mem. at 3 ("[The p]laintiff and DCPS agreed that V.T. would be provided instruction and related services on an interim basis during the COVID[-19] emergency . . . pending a final determination of an appropriate non-public separate school that could meet V.T.'s needs."). Although it was apparently understood that Garrison would be inadequate for V.T.'s 2020 IEP considering that the plaintiff was already litigating the appropriateness of that placement for the prior year, V.T. was placed at Garrison, despite the ultimate determination that it was inadequate for addressing V.T.'s educational needs.  J.T. I, 496 F. Supp. 3d at 213 ("[The defendant] previously admitted that Garrison does 'not fully' comply with V.T.'s [2019–2020] IEP[.]"). Finally, and importantly, once the 2020–2021 school year commenced, V.T. was being provided virtual education services with fewer students, and as the plaintiff admitted at the hearing "[V.T.] ha[d] benefited from the virtual learning since [he] ha[d] been participating."  AR at 16, ECF No. 43-1; see also Rowley, 458 U.S. at 206–07 ("[T]he individualized educational program developed through the [IDEA]'s procedures [must be] reasonably calculated to enable the child to receive educational benefits.").

In any event, the plaintiff's "passing reference[,]" R & R at 23, at the due process hearing regarding whether V.T. had an actual placement for the 2020–2021 school year was not an issue

_____

[9] The memorandum opinion in J.T. I was issued on October 1, 2020. See J.T. I, 496 F. Supp. 3d at 190.

"raised explicitly in the [due process] complaint[,]" <u>District of Columbia v. Pearson</u>, 923 F. Supp. 2d 82, 88 (D.D.C. 2013), for purposes of administrative exhaustion, <u>see</u> <u>Adams</u>, 285 F. Supp. 3d at 394.  Therefore, based on the fact that the plaintiff did not raise the issue of whether V.T. had received a school placement in the early months of the 2020–2021 school year in her due process complaint, the Court concludes that the plaintiff did not exhaust her administrative remedies as to this claim.[10]

## C.      The Plaintiff's Participation in the IEP Process

Next, the Court will address the plaintiff's objection that she was denied the opportunity to participate in the decision-making process for V.T.'s 2020 IEP.  The plaintiff alleged that the defendant should have "include[d] V.T.'s parents in the decision to place him at [Sheppard Pratt's] Lower and Middle School[,]" and that "[the defendant] made that decision without any attempt to include the parents in that decision."  Pl.'s Mem. at 24–25.  Specifically, the plaintiff alleged that "[the defendant] failed to include the parents in the Sheppard Pratt decision before December 2, 2020, thus entirely denying them participation up to that point[.]"  <u>Id.</u> at 25.  The defendant in response points to several locations in the record that "demonstrates the many opportunities [the p]laintiff had to participate in all educational decisions for V.T., including the school selection process."  Def.'s Mem. at 20 (citing AR at 1009–043, 1004–1008, 1073–78, ECF No. 43-1).

Under the IDEA, "[b]efore a public agency places a child with a disability in, or refers a child to, a private school or facility, the agency must initiate and conduct a meeting to develop an

---

[10] As the Court discusses in Section III.D, <u>infra</u>, the plaintiff has the burden to show that V.T. suffered "affirmative harm resulting from the particular IDEA violation."  <u>Olu-Cole v. E.L. Haynes Pub. Charter Sch.</u>, 930 F.3d 519, 531 (D.C. Cir. 2019) (internal quotation marks omitted).  To be sure, even if the plaintiff had administratively exhausted this claim, she has still failed to show that V.T. suffered any "affirmative harm[,]" <u>id.</u>, from the timing of his school placement, <u>see</u> AR at 16, ECF No. 43-1.

IEP for the child[.]"  34 C.F.R. § 300.325(a).  Although, here, the sequence of events suggests

that the defendant in fact identified the school placement for V.T. before the required meeting

was convened, R & R at 26 ("[i]t is undisputed that, as in J.T. I, '[the defendant] did not convene

[ ] a meeting attended by both [the] plaintiff and representatives of [Sheppard Pratt]' before the

location assignment was made."), the Magistrate Judge identified two important considerations:

(1) that "[the p]laintiff does not dispute that she participated in the formulation of the 2020 IEP

in July" and (2) that the plaintiff attended the December 2020 meeting and "the vast majority of

[the p]laintiff's questions were answered."  R & R at 27–28.  Additionally, the Magistrate Judge

pointed out that the plaintiff had actually visited the school in prior years when it was under a

different name.  R & R at 31 ("Sheppard Prat was 'otherwise the same school as Frost[;]' . . . the

only thing that changed was the name[.]").  The Magistrate Judge therefore concluded that

"although [the defendant] failed to comply with the letter of the regulation, [the defendant]

otherwise afforded [the] plaintiff ample opportunity to participate [and] . . . the procedural

violation did not rise to the level of a serious deprivation of [the] plaintiff's IDEA participation

rights."  R & R at 33 (internal quotation marks omitted) (quoting J.T. I, 496 F. Supp. 3d at 206).

The plaintiff objects to the Magistrate Judge's finding but admits that "th[e] case is

unlikely to turn on this issue."  Pl.'s Obj. at 30.  Nonetheless, the plaintiff argues that "[she] has

repeatedly complained about her total exclusion from the decision [to place V.T. at Sheppard

Pratt's Lower and Middle School], which was made before [the December 2020] meeting."  Id.

at 31.  Rather than explaining where in the record the plaintiff took exception to the defendant

placing V.T. at the Lower and Middle School, the plaintiff appears to rehash arguments from her

summary judgment motion.  Id. ("the [p]laintiff has repeatedly complained about her total

exclusion from the decision,"); id. ("[the defendant] made th[e] decision without any attempt to

include the parents[.]"); id. ("the placement had been decided without J.T.").[11] Here, because the

plaintiff raises objections that "merely rehash an argument presented and considered by the

[M]agistrate [J]udge . . . [, she is] not entitled to de novo review[,]" Shurtleff, 991 F. Supp. 2d

at 8, the Court "[will] review[ ] the [Report] only for clear error[,]" Houlahan, 979 F. Supp. 2d

at 88.

A careful review of the Magistrate Judge's Report does not reveal any misstatements of

law or inaccuracies based on the record.  Indeed, as the Magistrate Judge acknowledged, see R &

R at 26, the defendant should have "initiate[d] and conduct[ed] a meeting [with J.T.] to develop

an IEP for [V.T.,]" 34 C.F.R. § 300.325(a)(1), before it identified Sheppard Pratt as V.T.'s

placement for the 2020–2021 school year, see Def.'s Mem. at 5.  That decision constituted a

procedural violation as it "w[as] not in full compliance with [the] regulatory requirements[,]"

J.T. I, 496 F. Supp. 2d at 200, imposed by the IDEA, cf. Cooper v. District of Columbia, 77 F.

Supp. 3d 32, 37 (D.D.C. 2014) ("A school's decision to change a child's placement before

formulating an IEP is, at base, a procedural violation of the IDEA.").

However, as the Court indicated in Section III.A, supra, "[o]nly those procedural

violations of the IDEA which result in loss of educational opportunity or seriously deprive

parents of their participation rights are actionable[,]"  Lesesne, 447 F.3d at 834; see also J.T.

I, 496 F. Supp. at 203, and where a plaintiff has "substantial input into the IEP[,]" Cooper, 77 F.

Supp. 3d at 38, there is no "serious deprivation of [a] plaintiff's IDEA participation rights[,]" J.T.

---

[11] The plaintiff's several cursory objections to findings made by the Magistrate Judge are underwhelming and
unsupported by case law. Pl.'s Obj. at 31. For example, the plaintiff objects that "[t]he [M]agistrate [Judge] bypasses
[the defendant]'s deliberate exclusion of the parent, per [defendant] policy, and the resultant fact that the placement
had been decided without J.T. well before [the defendant] invited her to discuss it, [and] that J.T. was thereby
entirely excluded from the decision[-]making." Id. The plaintiff does not argue how this alleged "bypass" was an
error of law. J.T. I, 496 F. Supp. 3d at 213 n.10 (dismissing the plaintiff's objection to testimony where she
"offer[ed] no analysis other than [a] bald assertion that the [h]earing [o]fficer blatantly denied [the] plaintiff her
IDEA right[.]" (internal quotation marks omitted)).

I, 496 F. Supp. 3d at 206, sufficient to rise to the level of a FAPE denial, see id.  The Report cites

J.T. I directly for the finding that although the defendant procedurally violated the IDEA, V.T.

was otherwise not denied a FAPE due to the oversight.  See R & R at 33 (quoting J.T. I, 496 F.

Supp. 3d at 206) ("[A]lthough [the defendant] failed to comply with the letter of the regulation,

[the defendant] otherwise afforded [the] plaintiff ample opportunity to participate[.]").

Specifically, the court in J.T. I was presented with similar facts regarding J.T.'s participation in

the IEP process.  J.T. I, 496 F. Supp. 3d at. 195 (noting that the plaintiff alleged, among other

things, that "[the defendant] had denied her meaningful participation by refusing to discuss

specific school placements").  However, the court in J.T. I found that the plaintiff was afforded

the opportunity to meaningfully participate in the development of V.T.'s IEP by "solicit[ing]"

her input during various discussions around other topics such as "reading, writing, social and

emotional skills, speech services, occupational therapy, and classroom accommodations."  Id.

at 204.  Furthermore, in J.T. I, "the plaintiff enjoyed significant participation in the form of her

visits to Frost and [another school that was under consideration]."  Id.  Consequently, the court in

J.T. I held that the procedural violation "did not amount to [a] denial of a FAPE[.]"  J.T. I, 496 F.

Supp. 3d at 204 (citing Cooper, 77 F. Supp. 3d at 38).  So too is the case here.

Thus, absent any supporting case law or compelling argument that supports the plaintiff's

position that based on the record she was denied the opportunity to participate in the decision-

making process for V.T.'s 2020 IEP, the Court adopts the Magistrate Judge's recommendation

and will therefore deny the plaintiff's motion for summary judgment on this issue.

**D.    V.T.'s Entitlement to a Compensatory Education Evaluation**

Finally, the Court will address the plaintiff's objection to the Magistrate Judge's finding

that she is not entitled to a compensatory education evaluation of V.T. despite her arguments that

the 2020 IEP was "inappropriate[,]" Pl.'s Mem. at 16, and because V.T. had no school placement for "one quarter of the way through the school year[,]" id. at 15. The plaintiff asserts that the 2020 IEP was inappropriate due to the lack of "transportation accommodations[,]" which "impacted the inappropriate school choice[.]" Id. at 3. As the Court has previously indicated in Section I.B, supra, the plaintiff has long alleged that V.T. "cannot handle a long drive to and from school[,]" due to his "sensory issues, because of his disability with autism," resulting in him not being able to tolerate being in "[a] car [for] longer than [ ] [fifteen] or [twenty] minutes[.]" Pl.'s Mem. at 16. The plaintiff alleges that "[the defendant] has known about V.T.'s [travel related] disability for years." Id. However, in crafting the 2020 IEP, the defendant "requested updated documentation from [the p]laintiff regarding V.T.'s condition[,]" "[b]ecause the motion sickness has never been independently verified[.]" Def.'s Mem. at 7. In fact, the defendant states that "a [ ] psychologist [on behalf of the defendant], contacted V.T.'s medical doctor, who advised him that she did not report or provide any medical diagnosis that stipulates V.T. cannot ride in a car for longer than [fifteen] minutes and had no way of proving . . . that data." Id.

The plaintiff also alleges that because V.T. was not placed at a school for a quarter of the school year, the Court should "order compensatory education relief for the denial of a FAPE for one quarter of the school year." Pl.'s Mem. at 16. In response, the defendant argues that not only did "the hearing officer properly f[ind] no denial of [a] FAPE, so no compensatory education remedy is warranted[,]" but furthermore, "[the p]laintiff presented no evidence on a plan of compensatory education, as was her burden." Def.'s Mem. at 22 (citing Jones v. District of Columbia, No. 15-cv-1505 (BAH/GMH), 2017 WL 10651264, at *9 (D.D.C. Jan. 31, 2017)).

The Magistrate Judge first dispensed with the plaintiff's argument that the school placement in the 2020 IEP was inappropriate because the plaintiff had lost on the exact same argument before on similar facts.  R & R at 34 ("[The J.T. I court] reasoned that the IEP at issue (like the one here) contained no restrictions as to the distance V.T. could travel by bus, so there was nothing to support the argument that it could not implement V.T.'s IEP because the bus ride was too long."); see also J.T. I, 496 F. Supp. 3d at 207–08.  However, the Magistrate Judge found the plaintiff's testimony regarding V.T.'s transportation issues credible.  R & R at 36 ("The [defendant] has not even attempted to . . . offer [any] non-testimonial, extrinsic evidence that would justify disturbing the hearing officer's factual finding that V.T. suffered from motion sickness after twenty minutes in a vehicle." (internal quotation marks omitted)).  Consequently, the Magistrate Judge found that V.T.'s "IEP should have included additional transportation accommodations . . . [and that not including them] is a substantive violation of the IDEA."  Id. at 39.

Despite finding that the defendant violated V.T.'s substantive rights under the IDEA by not including additional transportation accommodations in the 2020 IEP, the Magistrate Judge nevertheless recommended finding for the defendant because the plaintiff provided no evidence that V.T. suffered any educational harm—let alone any harm sufficient to support a remedy.  Id. at 40 ("[The plaintiff] must show that the violation, whether substantive or procedural, caused some educational harm—a requirement that [the p]laintiff herself acknowledge[d].").  Essentially, the Magistrate Judge agreed with the hearing officer finding that the plaintiff attempted to bifurcate her claims in order to bring a separate claim specifically for compensatory education at a later date.  Id. at 41 ("[The plaintiff] appears to have strategically decided not to present such evidence so that she could later file a new administrative complaint based on the

compensatory education evaluation she seeks.").  Thus, the Magistrate Judge recommended that this Court find that the plaintiff failed to meet her burden "to provide 'evidence concerning a plan of compensatory education.'"  Id. (quoting Jones, 2017 WL 10651264, at *9).

The plaintiff objects to the Magistrate Judge's Recommendation, arguing that "[the defendant] waived any objection to the requested relief at the administrative level[,]" Pl.'s Obj. at 14, because "[the defendant] never argued that the [p]laintiff had failed to make her case for relief, apart from of course arguing that [the defendant] had not violated the IDEA." Id. at 15. The plaintiff further argues that "[she] must show specific harm if and only if [she] request[s] a specific award, which [she] does not." Id. at 16.  The defendant responds that "[the plaintiff] offered no evidence to justify a compensatory education award[,] . . . identified no such evidence in her closing argument or in her rebuttal, and failed to mention compensatory education in her post-hearing brief of legal and record citations." Def.'s Obj. Resp. at 5.  The defendant further states that "[the p]laintiff did not press any claim . . . that [the defendant] had failed to properly evaluate or reevaluate V.T.," and that "[the plaintiff] did not object to the description of V.T.'s present levels of performance in V.T.'s 2020 IEP[ ] or anything else . . . aside from the transportation accommodations and class size." Id. at 6.

When a court finds that a school district has denied a student a FAPE under the IDEA, "it has 'broad discretion to fashion an appropriate remedy,' which can go beyond prospectively providing a FAPE, and can include compensatory education." B.D. v. District of Columbia, 817 F.3d 792, 798 (D.C. Cir. 2016) (quoting Boose v. District of Columbia, 786 F.3d 1054, 1056 (D.C. Cir. 2015)).  In assessing whether an equitable remedy should be provided, however, "[courts] must consider all relevant factors." Branham v. District of Columbia, 427 F.3d 7, 12 (D.C. Cir. 2005) (quoting Florence Cty. Sch. Dist. Four v. Carter, 510 U.S. 7, 16 (1993)).  This

includes considering "the parties' conduct" in fashioning an equitable remedy.  Reid, 401 F.3d at
524.  For instance, a court may consider "the school system reasonably 'requir[ing] some time to
respond to a complex problem,'" or if "[a] parent['s] refusal to accept special education delays
the child's receipt of appropriate services[.]"  Id.

 Typically, "[c]ompensatory education involves discretionary, prospective, injunctive
relief crafted by a court to remedy what might be termed an educational deficit created by an
educational agency's failure over a given period of time to provide a FAPE to a student."  Id.
at 523 (internal quotation marks omitted) (quoting G ex rel. RG v. Fort Bragg Dependent Schs.,
343 F.3d 295, 309 (4th Cir. 2003)).  However, "[t]here is no obligation to provide a day-for-day
compensation for time missed.  Appropriate relief is relief designed to ensure that the student is
appropriately educated within the meaning of the IDEA."  Id. at 524 (quoting Parents of Student
W. v. Puyallup School Dist., No. 3, 31 F.3d 1489, 1497 (9th Cir. 1994)).  Nevertheless, "the
inquiry must be fact-specific and . . . the ultimate award must be reasonably calculated to provide
the educational benefits that likely would have accrued from special education services the
school district should have supplied in the first place."  Id.

 Moreover, "[e]ven if entitlement to an award is shown through a denial of a free and
appropriate public education, it may be conceivable that no compensatory education is required
for the denial of a FAPE either because it would not help or because the student has flourished in
his current placement."  Phillips ex rel. T.P. v. District of Columbia, 932 F. Supp. 2d 42, 50
(D.D.C. 2013) (Walton, J.) (quoting Cousins v. District of Columbia, 880 F. Supp. 2d 142, 145
n.3 (D.D.C. 2012)).  Indeed, "the weight of authority in this Circuit . . . recognizes that an award
of compensatory education is not mandatory in cases where a denial of a FAPE is established."
Id. at 52 n.4; see Reid, 401 F.3d at 524; see also B.D., 817 F.3d at 798 ("An appropriate

compensatory education award must rely on individualized assessments, and the equitable and

flexible nature of the remedy will produce different results in different cases depending on the

child's needs." (internal quotation marks omitted)).

Relevant to the transportation issue during the 2020 IEP discussions were the effects of

the COVID-19 pandemic.  Def.'s Mem. at 7 ("[S]ince in-person school was not occurring at that

time due to the global pandemic, student bus transportation was not occurring at that time.").  As

noted in the parties' briefings as well as in the Report, see R & R at 44, the plaintiff does not

actually identify anything in the record which supports the position that the transportation

deficiency harmed V.T.'s education during the 2020–2021 school year, see generally Pl.'s Mem.

The plaintiff does present a hypothetical as support for what might have occurred had the

defendant properly accommodated V.T.'s transportation needs in the 2020 IEP.  Id. at 24 ("Had

[the defendant] developed an appropriate IEP for V.T. . . . [the defendant] would have placed

V.T. in an otherwise appropriate program close to his home . . . [and i]f V.T. then had been

unable to attend due to COVID-19, that school would have provided him with remote

instruction.").  However, as the Magistrate Judge notes in his Report, "none [of these

contingencies are] supported by evidence before the hearing officer or this Court[,]" R & R at 45,

and "V.T. was [in fact] provided with remote instruction . . . for the 2020–2021 school year[,]"[12]

_____

[12] In its cross-motion, the defendant provides two letters confirming that even after V.T. was assigned to Sheppard
Pratt, remote instruction was to continue, or at a minimum, be an option for families with concerns about the uptick
in COVID-19 cases in the area.  See Def.'s Mem., Exhibit ("Ex.") 1 (November 6, 2020 Letter) at 1, ECF No. 39-1;
see id., Ex. 2 (February 5, 2021 Letter) at 1, ECF No. 39-2.  In his Report, the Magistrate Judge declined to hear
additional evidence on the matter because "there is already testimony in the record as to Sheppard Pratt's utilization
of virtual learning during the 2020–2021 school year."  R & R at 44 n.20.  Likewise, although the Court may
consider additional evidence in IDEA cases, see 20 U.S.C. § 1415(i)(2)(C)(ii), the Court need not consider the
exhibits supplied by the defendant in rendering its decision because they merely present facts already in the existing
record, Fullmore v. District of Columbia, 40 F. Supp. 3d 174, 180 (D.D.C. 2014) ("The reasons for considering such
supplemental evidence might include gaps in the administrative transcript owing to . . . an improper exclusion of
evidence . . . and evidence concerning relevant events occurring subsequent to the administrative hearing." (internal
quotation marks omitted)).

id. (emphasis omitted).  Accordingly, while the Court agrees that additional transportation

accommodations should have been considered in the 2020 IEP, which resulted in the denial of a

FAPE for V.T., a "fact-specific [inquiry]" of the record does not support a finding that an

unspecified compensatory education evaluation is deemed "[a]ppropriate relief" to make up for

any alleged "educational deficit" V.T. may have suffered.[13]  Reid, 401 F.3d at 523–24.

The Court cannot identify, nor does the plaintiff point to, any specific evidence of harm

V.T. sustained stemming from the 2020 IEP formulation.  See Pl.'s Obj. at 16.  To the contrary,

the record appears robust with evidence from teachers and administrators of V.T. performing at

or better than expected for that school year.  AR at 349, ECF No. 44-1 ("[V.T.]'s mastered a lot

of his goals and the ones that he's currently working on, he's progressing through those goals as

well."); AR at 100, ECF No. 45-1 ("[V.T.'s school team is] very happy with the [ ] marks he

made across the board, language, math, reading, and writing[.] . . . He's made a tremendous

amount of progress this school year.").  Although the plaintiff need not prove that harm occurred

to establish a substantive violation of the IDEA[14] and the subsequent denial of a FAPE to V.T.,

see N.W. v. District of Columbia, 253 F. Supp. 3d 5, 15–16 (D.D.C. 2017), to receive a

compensatory education award, the plaintiff is required to show that she is entitled to a remedy

that rectifies "[the] educational deficit created by [the defendant]'s failure over a given period of

time to provide a FAPE to [V.T.,]" Reid, 401 F.3d at 523.  Because the plaintiff has failed to

---

[13] While the lack of medical evidence to support the plaintiff's assertions about V.T.'s transportation issues is concerning, the Court gives "'due weight' to the HOD and does not substitute its own view of sound educational policy for that of the hearing officer."  Dixon, 83 F. Supp. 3d at 230.

[14] The plaintiff also argues that the defendant waived its argument that she must prove harm that V.T. sustained.  See Pl.'s Obj. at 14.  However, upon review of the record, the Court concludes that there is no basis for the plaintiff to assert waiver where the defendant has from the outset argued that V.T. was not denied a FAPE.  Def.'s Obj. Resp. at 8 ("The [defendant] has consistently maintained that [the p]laintiff failed to show a denial of FAPE or an entitlement to any requested relief[.]" (emphasis omitted)).

produce any evidence of harm, the Court concludes that "no compensatory education is required for the denial of a FAPE [, given that V.T.] has flourished in his current placement." Phillips, 932 F. Supp. 2d at 50.  Thus, the plaintiff has failed to "comply with the Reid standard [by] propos[ing] a well-articulated plan that reflects [V.T.'s] current educational abilities and needs and is supported by the record."  Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt ("Nesbitt II"), 583 F. Supp. 2d 169, 172 (D.D.C. 2008).[15] Accordingly, because the plaintiff has failed to demonstrate what compensatory education should be provided to V.T. to remedy what she contends he has been denied, the Court therefore denies the plaintiff's motion for summary judgment on this issue.

## IV.    CONCLUSION

For the foregoing reasons, and over the plaintiff's objections, the Court will adopt Magistrate Judge Harvey's Report and Recommendation, deny the plaintiff's motion for summary judgment, and grant the defendant's cross-motion for summary judgment.

**SO ORDERED** this 4th day of December, 2023.[16]

REGGIE B. WALTON
United States District Judge

---

[15] The Court also declines to prolong piecemeal litigation where a "parties' conduct[,]" Reid, 401 F.3d  at 524, suggests the strategic decision not to attempt to satisfy "the burden of propos[ing a well-articulated plan[,]" Phillips ex rel. T.P. v. District of Columbia, 736 F. Supp. 2d 240, 248 (D.D.C. 2010), for a compensatory education award in this case, but instead seeks to preserve it for V.T.'s benefit in the future, see R & R at 41 ("[the plaintiff] appears to have strategically decided not to present such evidence so that she could later file a new administrative complaint[.]"); see also Dorsey v. Jacobson Holman PLLC, 764 F. Supp. 2d 209, 213 (D.D.C. 2011) (stating that where possible, courts should "foster[ ] judicial economy and protect[ ] the parties from vexatious and expensive litigation.").  V.T. appears to have "flourished in his [ ] placement[,]" Phillips, 932 F. Supp. 2d at 50, during the 2020–2021 school year, and the Court need not remand this matter for further consideration nor fashion a remedy that simply casts more uncertainty into V.T.'s future IEP formulations.  Nesbitt II, 583 F. Supp. 2d at 172 (D.D.C. 2008) ("A responsibility to educate disabled children and compensate them for deficiencies in that education cannot hang in the air, as an unfulfilled aspiration. It has to be enforced by concrete action." (emphasis added)).

[16] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.